**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

SANTOS SERRANO,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY, et al.,

Respondents.

Case No. ED CV 26-3341-FMO (AS)

**ORDER GRANTING PETITION**

**INTRODUCTION**

On June 15, 2026, Santos Serrano (A# 246-057-185) ("Petitioner"), an immigration detainee who is proceeding pro se and is in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), challenging the legality of his December 2025 arrest and ongoing detention. (Dkt. No. 1). Petitioner also filed a motion for a temporary restraining order ("TRO"), which was subsequently denied. (Dkt. Nos. 2, 11).

On June 23, 2026, Respondents filed an Answer to the Petition. (Dkt. No. 9). Respondents state that they "oppose Petitioner's immediate release from immigration detention because Petitioner has a final order of removal and he has agreed to voluntarily depart the United States by July 8, 2026." (Id. at 2). According to Respondents, if Petitioner is entitled to any relief here, "it is not the extraordinary relief of immediate release but instead a bond hearing." (Id.).

On July 2, 2026, Petitioner filed a Motion - construed as a Second TRO Motion - seeking "emergency relief," including release from detention. (Dkt. No. 13). Petitioner contends that he never agreed to depart the United States voluntarily, and he asserts that he has filed an appeal of the immigration judge's removal order with the Board of Immigration Appeals (or "BIA"). (Id. at 2-6).

For the reasons stated below, the Petition is granted, and Respondents are ordered to immediately release Petitioner from immigration detention and further ordered from re-detaining Petitioner without providing him with notice and a pre-detention hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

**BACKGROUND**

Petitioner, a Mexican citizen, arrived in the United States without inspection on or about December 2003. (See Answer Ex. A;

Answer Ex. B at 3; Petition at 9, 48). He has resided in the United States continuously since then. He and his partner now have two daughters who are about nineteen and fourteen years old, respectively, and a son who is about eleven. (See Petition at 10-11, 58). His younger daughter was born deaf and requires "more special care and special professional help." (Id.). Petitioner's family depends on him for care and support, and he has worked for many years in construction to support them. (Id.).

In 2022, apparently arising from a domestic dispute with Petitioner's partner, Petitioner was arrested on charges of exhibiting a deadly weapon (other than a firearm) and threatening a crime with intent to terrorize. (See Answer Ex. B at 6; Petition at 58-59). He spent four days in jail but was then released under a diversion program, pursuant to which he completed anger management and other classes, and he also voluntarily attended Alcoholics Anonymous meetings. (Petition at 58-59; Answer Ex. B at 6).

On or about December 14, 2025, Petitioner was arrested by ICE agents who had abruptly approached his car when he was near a park in Los Angeles, California, and asked him whether he had legal status.[1] (Petition at 12; Answer Ex. B at 3, 6). He was taken to

[1] According to a deportation officer's report of the arrest, Petitioner voluntarily stepped out of his vehicle when asked to do so but was then deceptive and evasive when responding to the officers' questions – initially stating, for example, that his country of citizenship was the United States before eventually acknowledging, when unable to answer follow-up questions about

an ICE office in downtown Los Angeles for processing and served with a Notice to Appear charging him as removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). (Answer Ex. A; Answer Ex. B at 3-4; Petition at 12).

Petitioner subsequently filed an application for cancellation of removal under INA section 240A(b)(1), 8 U.S.C. § 1229b(b)(1), but an immigration judge denied it on June 8, 2026, and found Petitioner inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (See Answer Ex. C; Petition at 4, 13-15).

According to the immigration judge's order, Petitioner filed an application to voluntarily depart under INA section 240B(b), 8 U.S.C. 1229c(b), though Petitioner now disputes this. (See Answer Ex. C at 2; Second TRO Motion at 2-6). The immigration judge's order reflects that the purported voluntary departure application was granted, and Petitioner was thus ordered to depart from the United States by July 8, 2026. (Answer Ex. C at 2). Petitioner alleges that he has filed an appeal with the BIA (see Second TRO Motion at 2-3, 6), and the Automated Case Information website for the Executive Office for Immigration Review ("EOIR") reflects that a case appeal was filed on July 2, 2026, and is currently pending. See https://acis.eoir.justice.gov.

---

where he was born, that it was in fact Mexico. (Answer Ex. B at 6).

Although Petitioner has now been detained for more than six months, he has not received a bond hearing. (See Petition at 13).

**DISCUSSION**

Petitioner seeks release on the grounds that his detention at Adelanto ICE Processing Center since December 14, 2025, without a bond hearing violates his rights under the Due Process Clause, among other grounds. (See Petition). Respondents, as noted above, do not oppose an order requiring Petitioner to be provided a bond hearing, but they oppose Petitioner's immediate release from immigration detention because Petitioner has a final order of removal and "he has agreed to voluntarily depart the United States by July 8, 2026." (Response at 2). As explained below, Petitioner merits immediate release because his detention violates due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical

restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. That liberty interest persists even for those who have been previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). Accordingly, Petitioner has a protected due process liberty interest in his continued freedom. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine what process she is due, the Court considers the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the

> additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Petitioner has a significant private interest in remaining out of custody, given that he has resided in the United States for over twenty-five years, has three children including a daughter who was born deaf and requires special care, and works in construction to support his family. Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he has built and his strong ties to the Los Angeles area community. See, e.g., Pinchi, 792 F. Supp. 3d at 1033 (petitioner had substantial private interest "in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"); Ortega, 415 F. Supp. 3d at 970 (petitioner had substantial private interest in remaining on bond, as he was "living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community"); see also Morrissey, 408 U.S. at 482 (a parolee's liberty is "valuable" since it "enables him to do a wide range of things open to persons who have never been convicted of any crime," such as being employed, spending time with family and friends, and "form[ing] the other enduring attachments of normal life").

As to the second factor, the risk of erroneous deprivation of liberty is high if Petitioner is deprived of any custody redetermination hearing or is provided a hearing only after he has been detained. Particularly as Petitioner does not have any criminal convictions, an arrest without a prompt hearing or other procedural safeguard poses a significant risk of error, with substantial harm. See also Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

Furthermore, "there is no countervailing government interest – the third and final Mathews factor – that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Pinchi, 792 F. Supp. 3d at 1036. Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040. Although "[t]he government may have 'a strong interest' in

detaining noncitizens during the pendency of removal proceedings as needed to 'protect[] the public from dangerous criminal [noncitizens],' or to prevent flight and thereby 'increase the chance that . . . the [noncitizens] will be successfully removed,'" Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1013 (N.D. Cal. 2025) (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)), Respondents have not argued that any delay attributable to a pre-deprivation hearing would have risked flight or harm to others. As such, there is no significant government interest in forgoing a pre-detention hearing.

On balance, the Mathews factors show that Petitioner was entitled to notice and a hearing prior to being detained. See also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty." (emphasis in original)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original)). Given Petitioner's significant liberty interest at stake, moreover, the government at such a hearing must have the burden to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. See Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (where substantial liberty interests are at stake, government must prove by clear and convincing evidence that noncitizen is a

flight risk or a danger to the community to justify denial of bond), abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018); Duong, 800 F. Supp. 3d at 1042 ("[T]he Ninth Circuit has repeatedly held that due process requires the government to prove by clear and convincing evidence that a noncitizen facing detention is a flight risk or danger to the community." (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022))); Petrosyan v. Bondi, 2026 WL 790752, at *1 (C.D. Cal. Mar. 20, 2026); Padilla v. Bowen, 2025 WL 3251368, at *8 & n.3 (C.D. Cal. Nov. 21, 2025).

Having been deprived of that right, Petitioner is entitled to release from detention. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to Petitioner, who would continue to be held in detention without due process until the bond hearing takes place."); Esmail v. Noem, 2025 WL 3030590 at *6 (C.D. Cal. Sept. 12, 2025) ("The fact that [Petitioner] was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Additionally, to the extent Petitioner wishes to challenge the immigration judge's order regarding Petitioner's inadmissibility to the United States, or to otherwise dispute the government's intention to remove him from the United States, this Court lacks jurisdiction to review such matters. See 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for

judicial review of an order of removal."); id. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."); id. § 1252(g) ("Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."). To raise such challenges at this time, Petitioner must instead seek review before the BIA.[2]

---

[2] As noted above, Petitioner has filed an appeal of the immigration judge's order with the BIA (see Second TRO Motion at 2-3, 6), and this appeal is reflected on the EOIR's Automated Case Information website, see https://acis.eoir.justice.gov.

**ORDER**

Accordingly, the Court GRANTS the Petition (Dkt. No. 1); DENIES as moot the Second TRO application and Request for Counsel (Dkt. Nos. 13 & 16); ORDERS Respondents to immediately release Petitioner Santos Serrano (A# 246-057-185) from immigration detention, and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner without providing him with notice and a pre-deprivation hearing before a neutral decisonmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. If Petitioner is again placed into detention in this District following proceedings in this case, Respondents shall not transfer or remove Petitioner from this District unless executing a final order of removal issued against Petitioner. Should Respondents take steps to remove Petitioner to a third country, Respondents shall not remove Petitioner to any third country without providing Petitioner written notice and affording Petitioner a meaningful opportunity to seek any available fear-based protections or relief. Respondents are further ordered to file a "notice of compliance" within three days of the date of this Order and entry of Judgment.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 31, 2026

_____________/s/________________
FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE